May it please the court, good morning to all your honors. I'm Dennis McLaughlin. I'm with the city attorney's office in Tucson. I'm representing appellants Garnand and Salisbury. If possible, I would like to reserve three minutes for rebuttal. This is an interlocutory qualified immunity appeal. Appellant defendants are requesting qualified immunity on all of plaintiff's claims. You have our briefs. You know our arguments. I will try to synthesize our arguments on the various issues, but always with the proviso that what I really want to do is answer your questions and address your concerns. First issue is jurisdiction. There was a denial of qualified immunity by the district court on the basis that there was going to be, she wanted to allow more discovery, but the denial was a jurisprudential trigger. And under the Ganwich and Giebel cases, our position is, as we've made clear in the briefs, that you do have jurisdiction to handle this right now. Okay, let me push back on that a little as to the first search warrant. Okay. And if we refer to the first and the second, everybody will know what we're talking about. I certainly will, your honor. Okay. So you would agree that we do not have jurisdiction to resolve disputed fact issues in this interlocutory appeal, right? I would agree that if there are disputed fact issues, you can treat the facts most favorably to the plaintiff and still act. But where, with regard to the first search warrant, in your briefs, do you make an argument based on the facts as plaintiff alleges them to be? For example, that plaintiff was allowed to leave, that plaintiff didn't say it was his house. Where in your brief do you address the legal issues taking the facts that plaintiff's claim are disputed as true as to the first search warrant? So the way we've handled that, your honor, I think in our briefs, obviously you've read them, the search warrants are a defined universe. It's the facts that were presented to the magistrate at the time. But they're alleging judicial deception. Correct. Which we, first of all, have said in our brief, we said there is no deception. We pushed back and said, look, if you look at the record, there is no deception. Well, what do you mean there's no deception? I mean, wouldn't it be deception if, for example, there were this claim that he just left early, left quickly, but in fact they've claimed that an officer said he gave an officer a phone number and said you can go. Isn't that a difference? Not material, your honor, because the second thing about that warrant is assume that there is deception. And I'm saying hypothetically because we obviously don't agree.  They've agreed that there's probable cause to go into the scene, but they want a force field around themselves to say you can't do anything with Greg Moore. Well, I don't understand how if there is judicial deception, then we can assume that even, I mean, I disagree that if we take all of the facts they allege is true, we can just say, well, there was still probable cause for everything in the warrant. No, that's exactly what the law says you do do, your honor. You take out the deception and you say, do the facts still allow for probable cause? Right, but I'm not sure we can do that here. I simply disagree, your honor. No, I understand. I'm not saying we can't theoretically do it. I'm saying with those facts. I understand. But you had, they wanted personal characteristics. They wanted DNA, fingerprints. They wanted his cell phone. He's the person who has keys. They've had to force entry. He says he was in the building. They're going to need to get his characteristics either to clear him or to find out more about whether he's involved. And that's all the probable cause is is to get evidence of the crime at the location, which in this case is his body. There's, if you leave out the deception, there was probable cause here. So do you disagree with the statement made by the district court with respect to judicial deception that the plaintiffs have not had a full and fair opportunity to discover evidence relevant to the merits of those claims? We do disagree, your honor, because the question is not whether they've had a full opportunity for discovery. It's whether you have all the facts you need to decide. No, I mean, I'm asking you, do you think that they've had a full and fair opportunity for discovery on this? No, I disagree. I think they have had an opportunity for discovery. They filed on these claims, they filed motions for summary judgment three and a half years ago. So you just think that the district court is dead wrong on that? I think for what we need for QI, the district court is incorrect, yes. Yes, and discovery is not on appeal. It's not before you. No, I know, but, I mean, in terms of analyzing our jurisdicts, And when a district court says, I need more facts, there are disputed facts, in these cases we look at that pretty hard because the district court is in a good position to determine whether or not it can decide qualified immunity based on the record before it. But the whole standard, excuse me, I'm sorry. And you'd agree that if there's a factual dispute, then we don't have jurisdiction over the interlocutory view. If there's a factual, if there's a true factual dispute, but you are still in a position on this record to take the facts in the light most favorable to plaintiffs and find qualified immunity. So we assume there's judicial deception, correct? Well. We have to because that's a disputed issue. You're asking us to assume?  No, I'm just saying, if we analyze this the way you want us to, then we have to assume there was judicial deception, and where does that leave us? That leaves you with the next step of taking, assuming that's true. And now is what's left, if you put in or take out what you need to, enough to give probable cause? Absolutely here. If we're talking the first warrant, I'm assuming. Yeah, just the first warrant. Yeah, that's the next step. Assuming you made that argument in your briefs. Yes. Okay, all right. And I believe we did, Your Honor. So I want to move to the second warrant. Okay. So this second warrant strikes me at every level as overbroad. And I'll give you some examples, and then I'll let you push back on this. So as I read this warrant, it seeks all financial information of any kind or nature whatsoever, unlimited as to date, with regard to Gregory Moore. That's the way I read this. Where is the probable cause for every piece of financial information unlimited as to date or subject as to Gregory Moore? Well, there's multiple businesses that Gregory Moore has. At this point, Detective Garnon doesn't know what businesses may or may not be involved. They are all at that address. So in your view, the fact that there is theoretically, and for the sake of argument here, I'll give it to you, that there is probable cause that this person might be involved in this and might have some financial information relevant to the arsons, that that gives you by itself probable cause to have every single piece of financial information on any subject, unlimited as to time, possessed by this person. Not even from 2011 to the present, but totally unlimited. Well, I think it allows them to go to that address and get financial records and then go through them to see if there is. Well, no, what it allows them to do is take every single piece of financial information with them. Well, I go back to he doesn't know what may be relevant, which financial things. But that's not the way probable cause, as I understand it, works. You have to show why what you are asking the neutral magistrate to give you, why you have probable cause to believe that that is evidence of a crime, not, well, you know, he might have some financial information that's relevant to the crime, but we want every single piece. What case do you have that says that you can get a warrant for every single piece of financial information? And here you get to search through every electronic device unlimited for everything. Well, I don't think that's what the warrant was trying to do. Well, that may not have been what the warrant is trying to do, but that's what the warrant did. As far as I can tell, if you can show me, and I have the warrant in front of me here, if you can show me that there are any limitations on financial information or electronics, point them out to me. Well, I know at one space there's documents relating to certain addresses. You're right, and that may have its own problem, but I'm looking at Part 2 and Part 3. The financial information and the electronics. Well, it's business accounts related to Eric Moore, Gregory Moore. Well, it says credit card documents, savings accounts, checking accounts, business accounts related to Eric Gregory Moore and associated businesses, including, but not limited to. So I see no limitations there at all. Well, the limitations are that it's his documents at that address looking for, under 132310, fraudulent schemes. Well, but it doesn't say that. That may be what they're going to want to find, but it says every financial piece of information on his person on these two premises or in these vehicles. Well, the warrant is the warrant, Your Honor. I don't know what to tell you on that, but I will tell you that there never was a claim of overbroad warrant brought in this case. Well, I disagree with you. We have looked at the record and in various pleadings that the plaintiff filed below overbreadth, as mentioned. He said he took too much under the warrant, which is a different animal than saying the warrant was overbroad. Okay, well, we'll just have to disagree on that. Okay. So what else can I answer for you right now? We believe that there's probable cause under the first and the second warrant. We have a claim of detention of Patricia Moore at her house when the second warrant is executed, which is pretty clearly a Michigan v. Summers and a Mueller v. Mena appropriate detention. We have Greg Moore claiming that there was excessive force used. So on the appropriate detention, would you agree that if we were hypothetically to decide that no reasonable officer could rely on the second warrant, that you would not be entitled to qualified immunity on the detention? Was he reasonable in believing he had probable cause to detain? Yes. Yes, if we were to find that no reasonable police officer could rely on this warrant. Then I believe that would not be a QI. But that's not our facts. What's the status of the criminal case? I'm sorry? What's the status of the criminal case? I do not know, Your Honor. There has been an indictment. I do not know where that case is. And I don't know whether there's been particularly any motion to suppress or anything like that. It's not directly relevant, but I was just curious. My understanding from our own looking at publicly available information, and your friend can correct me, I believe there have been some motions to suppress that were denied. You're ahead of me, Your Honor, and thank you. You're down to about a minute. Thank you. I'm going to give you the elevator pitch of why First Amendment retaliation is not a viable claim here, and we can discuss any that you want to discuss. There's no protected speech. Rubio, Aguilar, and Mayer control. Skoog is factually and legally distinguishable. The First Amendment retaliation test that you usually use can't be applied to attorney-directed silence. That's not where it's noncustodial. Skoog itself disclaims in a clearly established law. Dietrich fatally limits Skoog. We win if there's a Dietrich weighing, and Reichla already limits or nullifies Skoog, and Skoog is dead after Neves. With that, Your Honor, I will take any questions you have, or I will reserve my time. All right. We'll give you some extra rebuttal time. Thank you, Judge. Thank you, Judge. Good morning, and may it please the Court, my name is Larry Wolkin, and I represent the Moores. Just last year, this Court in Ballou v. McIlvain could not have been more clear when it said, quote, our jurisdiction under the collateral order doctrine is limited to reviewing a denial of qualified immunity, close quote. Accepting jurisdiction over interlocutory appeals that do not conclusively resolve a defendant's entitlement to immunity frustrates the job of the district court. It creates delays, it creates unnecessary interlocutory appeals, and it frustrates the purpose of having a quick and speedy resolution to claims. The appellant's position that any time they raise qualified immunity in a motion and then that motion is denied, is immediately appealable, was roundly rejected by the U.S. Supreme Court in Johnson v. Jones and has also been rejected by every circuit court decision of which we have cited many, which say that this court, circuit courts, cannot review interlocutory orders when there are questions of fact. But on this record, that's not even what the court did. The district court said, I'm not making a determination about The district court denied the motion. The district court denied the motion for summary judgment with leave to refile, and the denial was without prejudice. But it was a denial. It was a denial. It was a motion made to afford the defendants qualified immunity. Yes? No. It was the grant of a Rule 56D request. No, I understand, but the defendants were seeking qualified immunity, right? Correct. And their motion was denied. Correct. With express leave to refile once discovery was permitted on the questions that the district court needed answers. How long does the district court get to delay, in your view, a qualified immunity motion, and by doing so strip us of jurisdiction to have defendants vindicate their rights to be free from constitutionally based, meritless lawsuits? Well, Your Honor, a few things. First, I don't think the district court at all caused delay. What the district court said was that it needed resolution to certain facts. But my question is, how long does the district court get to put it off? The district court is entitled. Before we can say, no, we have jurisdiction. The district, well, this court's jurisdiction turns on the basis for the order which denies summary judgment. So any time a district court denies a qualified immunity motion, well, you know, we need more discovery here. You can refile this in a year when discovery is ended. We have no jurisdiction then? Oh, I don't think that's at all true. I think what's true. I'm giving you a hypothetical. So let's say the district court said, come back in a year. This is a complicated case. Discovery's going to take a year. Come back in a year. And in that hypothetical case, they appeal. Do we have jurisdiction there where the district court has said to move on, come back in a year? Well, it would depend. It would depend on what was supposed to be happening in the year. And I don't think the district court here put a time frame on it. I think what the district court said was there are specific issues on which discovery is appropriate. And once those issues are discovered and then brought back on a factual record, then I can decide the qualified immunity question. And that is consistent with this court's holding in Moss v. Secret Service and Miller v. Gamby, which demonstrates that rulings are appropriately deferred when the district court makes a finding that discovery is necessary to litigate the merits of the immunity portion of the claim. For instance, in Miller, this court went on to say that a court's order deferring the ruling on immunity is not appealable because it's not a final order denying the claimed existence of immunity. And in Moss, this court recognized that a categorical prohibition on discovery related to qualified immunity cannot be reconciled with the Supreme Court's holdings in both Anderson v. Creighton and Crossford L. v. Britton. Those cases held, and I think this is the direct answer to your question, those cases held that when discovery, which is tailored and necessary in order to address the immunity question, is needed, that is appropriate. And on this record, in our case, the Morse submitted an exceptionally detailed 45-page affidavit outlining exactly what discovery it was that they were seeking. And the court granted, as this court knows, Rule 5060 relief. Many, if not all, of the discovery requested speaks to what this court called in Miller functions that were performed. In other words, things that were done, things that were not done, the mental state of the officer in applying for the warrant, whether there was judicial deception, the things that your Honor— How many pages of documents did you get from defendants? Well, I don't know an exact amount, but I can tell you— Was it thousands of pages? It was thousands of pages, many of which were severely redacted, which is the— which is the reason why the Morse pushed and pushed and pushed for discovery that they were consistently frustrated with, frustrated in getting. Importantly, the district court here left no question in the universe about what it did. It said it, quote, has not made any determination whether the defendants are entitled to qualified immunity. It merely found that the arguments raised in the defendant's amended motion for summary judgment could not be resolved without discovery. You may want to move on to your merits arguments. Your Honor, I think that the—with respect to the merits, we are in a very fact—a very procedurally confusing state. And the reason that is is because we have a motion, an amended motion for summary judgment, with literally thousands of pages of redacted documents, and some not redacted, and the Morse didn't even file a response to the motion for summary judgment on the merits. And so we're left with this procedural posture in which there's no mechanism to look at the merits, and here's why. We have the—this is not a motion to dismiss, as the court knows. We're not just looking at the complaint and then trying to figure out whether the law is neat and abstractly established, which is what this court routinely says it has jurisdiction to review, and that's following the Supreme Court's holding in Johnson. What we have are the allegations in a complaint, this ginormous record which was presented by the defendants, then an extensive affidavit that said that here's what I need, here's what the Morse need for discovery, and the court said we agree, or the court said it agrees that that discovery is appropriate. So are you conceding that if we reject your jurisdictional argument, you lose? No, certainly not, and here's why. The complaint alleges a few things that—and if we're only looking to the complaint, because that would be the procedural— we have a motion for summary judgment, and then we're not looking to any facts presented by the Morse. You're saying that when we decide the merits, if we were to reach the merits here, we can't look at the search warrants? Well, in a way, yes, because the search warrants are not part of the complaint. They're not incorporated into the complaint. If on this record—I mean, this case comes to you in a bizarre stance because we haven't presented any facts. We've presented allegations from the complaint, and those allegations include, one, that the search warrant was— both search warrants were procured with judicial deception, two, that even if they were overbrought on their face, that every reasonable officer would know that enforcing the search warrant would be unconstitutional. With respect to Mrs. Moore's detention, we allege that it was an arrest. They say no in their briefs. There's no facts. There's just allegations. So what's the mechanism by which this court would then look to resolve issues of fact when we haven't presented any facts? We've just got the allegations of the complaint, and that's why this is such a strange record. The fact that court after court after court, starting with the Supreme Court and this court specifically, says that its jurisdiction is over neat, abstract issues, the fact that we're on a record that's this tall seemingly suggests that what you're being asked to do today is not to resolve some neat, abstract issue but rather do what this court held is more appropriately done at the district court level, which is to sift through— If we're talking about neat, abstract issues, can you tell me, with respect to your First Amendment claim, what law supports that? What case supports that? Well, there's—with respect to the First Amendment claim— Right. I'm just confining my question to the First Amendment, because that seems to me to be a pure issue of law. Whether a—and excuse me, Judge Thomas, I'm not understanding the question correctly, but my understanding from your question is, is there any law which holds that a police officer may not initiate either a—or execute a overbroad warrant or a Fourth Amendment or any sort of detention based on the exercise of First Amendment activity? My question is limited to what you've alleged in the First Amendment. Leave the Fourth Amendment aside. You claim that there's a—your client's constitutional rights, First Amendment rights, were violated. And what case gives—says that they're violated under these circumstances? I didn't see one in your brief. I would look to Beck v. City of Upland, where this court says that— this circuit says that when there's a showing of some sort of heated personal confrontation and then a retaliatory action that follows that, that would be unconstitutional. Our case—well, a case that I—the Lacey case v. New Times says that when someone speaks out and there's a retaliatory— Mr. Kensal, let me ask a more specific question. You have alleged that your client had a First Amendment right to remain silent when questioned by officers, correct? Yes, Your Honor. What case says that? The—I'm sorry, I'm drawing a blink. The U.S. Supreme Court said it, and it's the—and— They might have said there's a Fourth Amendment right, but where did they say there's a First Amendment right? Yes, and I'm sorry, I'm coming up with a—oh. Well, I think this court said it in the Beck v. Upland case and also in the Lacey case, but the Supreme Court held, and we cited this case in our papers, that— I'm sorry, it's Woolley v. Maynard, which is a 1977 case where the Supreme Court said, quote, the right to refrain from speaking at all, close quote, is protected First Amendment activity. And that was in response to being questioned by officers that an individual has a First Amendment right not to respond to questions from officers? I don't think— Investigating a crime? Right, I don't think—no, I would yield that I don't think that the context of the case is in response to an officer interrogation, but if the First Amendment broadly protects both speech and the right to remain silent, I think a logical extension would be that if an officer retaliates against a person for exercising that right, that that would be a constitutional deprivation. But don't we have to look more specifically than that? I'm just not sure that Woolley—you know, maybe it establishes a broad principle, but I don't see that that principle applies during police interviews. But is that your best case for that principle? It is, Your Honor, in addition to the Lacey case, which says that retaliation in response to First Amendment activities is unconstitutional. The Lacey case is a Ninth Circuit case. I mean, I think the stronger argument certainly rests with the Fourth Amendment activity with the illegal detention, with the overuse of handcuffs, with the enforcement of an overly broad warrant and the procurement and enforcement of a warrant without probable cause. But I think those are the strongest merits arguments that the Moores have. But regardless, I don't think that that legal issue is properly before this— even that issue is properly before this Court simply because it was never briefed below. In other words, this Court hasn't had the benefit of briefing below, and I understand that it can certainly do this. How much discovery could you possibly have needed to determine whether there's a case that establishes—that clearly establishes a First Amendment right, as you've alleged? I mean, how could discovery even possibly bear on your First Amendment claims? Discovery can bear on the question about whether the First Amendment— whether the response to the First Amendment activity was retaliatory. But the motion was there's no case that establishes this right, right? The motion wasn't based on anything that could be learned in discovery. It's that you need clearly established law. You don't have it. Well, and again, I think we're speaking somewhat in hypotheticals because that issue was never presented to the district court. I mean, it was on their motion, but there was never a response because the— Well, we didn't choose not to. We chose to move for relief under Rule 56D, which the court found was appropriate and granted. Had the court asked for—had the court said no, we're not going to grant 56D relief, respond to the merits, we certainly would have done that. As the Supreme Court said in Johnson v. Jones— Counsel, you're out of time. Do you have a final point you'd like to make? Oh, yes. I'm sorry. My final point is this. Appeals that resolve neat, abstract issues of law or orders that resolve neat, abstract issues of law are properly before this court. The district court did not make a ruling on whether the defendants were entitled to qualified immunity, and because of that fact, this court does not have jurisdiction and this case should be dismissed. We may be back here again once summary judgment is brought and the rulings may be questioned, but this is not the appropriate forum to resolve those issues today. Thank you very much. All right. Thank you, Counsel. We'll give you a minute for rebuttal. Thank you, Your Honor. I'll be very quick. Giebel and Ganwich are the controlling cases, and they say you do have jurisdiction. Moss, there was no ruling on motion for summary judgment, so there was no denial. That's the distinction. They got unredacted materials before they were required to respond to a motion for summary judgment. That's just a misstatement of the record. It's a motion for summary judgment, not a motion to dismiss here, so you would look to the defendant's depositions, not merely their allegations, which is what they want you to do. The plaintiffs killed their own case with their own testimony, and he also said the search warrants don't need to be looked at, which is ludicrous. They obviously need to be looked at on those claims. Thank you for your time, attention, courtesy, and questions, and we'll submit the matter. All right. We thank Counsel for their arguments, and we will proceed to the second case on the argument calendar.
judges: THOMAS, BENNETT, THOMAS